DAVIDOFF HUTCHER & CITRON, LLP
*Proposed Attorneys for the Debtor*
605 Third Avenue
New York, New York 10158
(212) 557-7200
Robert L. Rattet, Esq.
Jonathan S. Pasternak, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------X

In re:

AGUILA, INC.,

                   Debtor.
---------------------------------X

Chapter 11
Case No. 21-11776
(MG)

## DECLARATION OF RAYMOND SANCHEZ PURSUANT TO LOCAL BANKRUPTCY RULE 1007-2

RAYMOND SANCHEZ, under penalties of perjury, hereby declares and states as follows:

1.      I am the Chief Executive Officer of Aguila, Inc. (the "Debtor") and I submit this Declaration pursuant to Rule 1007-2 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York in support of the Debtor's motions and applications filed substantially simultaneous with this Declaration (the "First Day Motions").

*[the rest of this page is intentionally left blank]*

# PART I

## BACKGROUND

2.      Previously in my career, I served as the General Counsel and Senior Policy Manager in the Office of the Bronx Borough President, where I oversaw all legal matters and the implementation of the agency's policy agenda.

3.      I have also served on several boards and committees on behalf of Borough President Ruben Diaz Jr., including Governor Cuomo's New York City Regional Economic Development Council. I was also appointed to the New York City Franchise and Concession Review Committee.

4.      City & State Magazine named me a 2015 New York City 40 Under 40 Rising Star. In 2016, the Hispanic Coalition NY also named me one of their 40 Under 40 Rising Stars.

5.      Since August 14, 2020, I have been involved in managing and/or assisting with the affairs of the Debtor. I am currently the Chief Executive Officer of the Debtor.

6.      The Debtor was founded on September 22, 2000, under the New York Consolidated Laws, Not-For-Profit Corporation Law - NPC § 402.

7.      The Debtor is a nonprofit corporation organized under the laws of New York, with 28 employees as of September 17, 2021. Until September 30, 2021, the Debtor managed its operations at 665 Cauldwell Ave, Bronx, NY 10455, and then moved to The Harlem Collective, LLA, 1850 Amsterdam Ave, New York, New York 10031.

8.      The Debtor historically operated as a Bronx-based homeless service provider with numerous city contracts and political connections. The Debtor's mission is to help families and individuals thrive in New York City through the provision of transitional housing and other support services. Often this involves breaking the cycles of generational and situational homelessness. The Debtor partners with the New York City Department of Homeless Services ("DHS") to maintain

2

numerous amounts of transitional housing. This housing is safe and secure and creates a cohesive and homelike atmosphere to help families rebuild their lives and get back on the path to independent living. The Debtor's social services staff deliver an array of client services including job placement, advocacy, and childhood enrichment programs. They also coordinate support available to clients in the local community. The social services are provided to client residents in the Debtor's transitional housing and also to residents of transitional housing maintained by other not-for-profits. The Debtor's housing specialists assist the clients with finding permanent, affordable, and quality housing.

9.      The Debtor is currently plagued with a series of financial issues created primarily by its former Chief Executive Officer, Jenny Rivera Lozada ("Rivera"), a legal dispute with the nonprofit organization, Neighborhood Association for Inter-Cultural Affairs ("NAICA"), and the Coronavirus Pandemic.

10.     On September 30, 2020, Rivera was removed as the CEO of the Debtor following the New York State Attorney General Letitia James's office launching a sweeping criminal probe of Rivera and others associated with the Debtor. She was ultimately terminated on October 9, 2020. The investigators claimed they had "probable cause" to investigate Rivera and unnamed co-conspirators for a host of alleged crimes including commercial bribery and bribe receiving, grand larceny, criminal possession of stolen property, falsifying business records, false instrument filing and money laundering.

11.     I joined the Debtor in mid-August 2020 after a Board member brought this matter to my attention and requested my assistance. I was installed as the new CEO of the Debtor on September 30, 2020, to help straighten out the Debtor's affairs following the conduct of Rivera and others associated with her.

3

12.    Prior to Rivera's removal, the Debtor was involved in an attempted merger deal ("the Merger") with NAICA. This Merger was made between Izquierdo Arroyo ("Arroyo"), Chief Operating Officer of NAICA, and Rivera.

13.    Before Arroyo became the Chief Operating Officer of NAICA, he served 10 months in federal prison after pleading guilty to embezzling more than $115,000 from a family-connected nonprofit to pay for lavish meals and trips. Arroyo obtained a job as a case manager with NAICA upon release before rising in the ranks to his current role as Chief Operating Officer.

14.    The Merger negotiated between Arroyo and Rivera was done without any input from the Board of Directors of the Debtor nor the Board's counsel Gerard Vince. It is the Debtor's belief that this Merger was more akin to a hostile takeover.

15.    Under the terms of the Merger, NAICA negotiated with Rivera, she agreed to resign, then would have handed over control of the Debtor to NAICA and falsely claimed four of the six members of the Board of Directors had resigned. Rivera later submitted a formal resignation, acknowledging that her Executive Employment Contract with the Debtor would be canceled based on a non-disclosure agreement.

16.    Additionally, under the terms of the Merger, Luis Diaz ("Diaz"), was to be paid as a consultant for the newly merged entity under a new board of directors. Diaz was previously a paid outside consultant to the Debtor and was suspended as Bronx County Clerk after the New York State Attorney General mounted a raid on his offices amid a probe. The raid of Diaz's office was contemporaneous to the Attorney General's search of Rivera's home and office.

17.    Arroyo then contacted the Debtor's director of finance and "falsely and fraudulently" claimed that "the Debtor is now in affiliation with the NAICA organization" and demanded to "begin a process of transition." NAICA then attempted to access the Debtor's bank

4

accounts.

18.     Another issue with the Merger was the fact that NAICA's board chairman, Ululy Rafael Martinez ("Martinez"), acted as the attorney for both parties pursuant to a dual representation agreement executed by Rivera on behalf of Aguila, and by Arroyo on behalf of NAICA, during the negotiations and execution of the attempted merger.

19.     On August 17th, 2020, after being made aware of the situation, the Debtor's Board of Directors unanimously voted to reject any merger or affiliation with NAICA.

20.     On August 24th, 2020, NAICA filed a lawsuit in the Supreme Court of New York, Bronx County (*Neighborhood Association For Inter-Cultural Affairs, Inc. v. Aguila, Inc. et al*, Index No: 29451/2020E) against the Debtor and its Board of Directors, alleging *inter alia*, breach of agreement with regard to the aforementioned Merger.

21.     On July 26th, 2021, Rivera filed a lawsuit in the Supreme Court of New York, Bronx County (*Jenny Rivera v. Aguila, Inc. et al*, Index No: 810061/2021E) against myself, the Debtor, and Sonally Melendez in her alleged capacity as Chairwoman of the Board of Directors of the Debtor alleging *inter alia*, breach of an alleged employment contract.

22.     Since the fallout with Rivera, the Debtor has experienced a difficulty of collecting receivables with DHS, resulting in significant arrears and liabilities with both former and past vendors, including landlords.

23.     As a result of these lawsuits and past transgressions of its former officers, the Debtor is facing insolvency. Several highly credible media reports have stated DHS will soon cancel the Debtor's one remaining contract as of December 31, 2021, and the Debtor currently has in its account $3.2 million in reimbursements from DHS.

24.     The Debtor's liabilities, however, exceed its receivables.

5

25.     Accordingly, on October 15, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for reorganization in this Court.

26.     The Debtor intends to utilize the Chapter 11 process to orderly wind down its affairs and collect out its receivables so that a liquidating Plan of Reorganization can be filed within a reasonable amount of time. The Debtor is confident that proceeding in Chapter 11 is in the best interest of the Debtor, its estate, and the creditors as a whole.

27.     The needs and interests of the Debtor's creditors will best be served by the continued possession of its property and management of its affairs as a debtor in possession under Chapter 11 until a restructuring plan can be formulated and presented to creditors.

## PART II

### INFORMATION REQUIRED BY LOCAL BANKRUTPCY RULE 1007

28.     In addition to the foregoing, S.D.N.Y. Local Bankruptcy Rule 1007-2 requires certain information related to the Debtor, which is set forth below.

### Local Rule 1007-2(a)(1)

29.     The Debtor is headquartered at The Harlem Collective, LLH, 1850 Amsterdam Ave, New York, New York 10031. Established in 2000, the Debtor operates as a homeless service provider with numerous city contracts and political connections.

### Local Rule 1007-2(a)(2)

30.     This case was not originally commenced under Chapter 7 or 13 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code").

### Local Rule 1007-2(a)(3)

31.     Upon information and belief, no committee was organized prior to the order for

6

relief in this Chapter 11 case.

**Local Rule 1007-2(a)(4)**

32.    A list of the names and addresses of the Debtor's 20 largest unsecured claims, excluding those who would not be entitled to vote at a creditors' meeting and creditors who are "insiders" as that term is defined in §101(31) of the Bankruptcy Code is annexed hereto as **Schedule I**.

**Local Rule 1007-2(a)(5)**

33.    The Debtor has one secured creditor. A schedule of the Debtor's 5 largest secured creditors is annexed hereto as **Schedule II**.

**Local Rule 1007-2(a)(6)**

34.    A summary of the Debtor's consolidated assets and liabilities is annexed hereto as **Schedule III.**

**Local Rule 1007-2(a)(7)**

35.    There are no publicly held securities of the Debtor.

**Local Rule 1007-2(a)(8)**

36.    None of the Debtor's property is in the possession of any custodian, public officer, mortgagee, pledge, assignee of rents, or secured creditor, or any agent for such entity.

**Local Rule 1007-2(a)(9)**

37.    The Debtor rents its space at The Harlem Collective, LLH, 1850 Amsterdam Ave, New York, New York 10031.

**Local Rule 1007-2(a)(10)**

38.    The Debtor's books and records and substantial assets are located at The Harlem Collective, LLA, 1850 Amsterdam Ave, New York, New York 10031.

7

**Local Rule 1007-2(a)(11)**

39.    All suits or proceedings in which the Debtor is named as a party will be listed in the Debtor's Statement of Financial Affairs to be filed.

**Local Rule 1007-2(a)(12)**

40.    The Debtor is currently managed by Raymond Sanchez as Chief Executive Officer.

**Local Rule 1007-2(b)(1) and (2)**

41.    The Debtor currently has 28 employees.

42.    The Debtors' estimated gross weekly payroll and payments to managers, members, and directors for the thirty (30) day period following the Chapter 11 petition is $21,978.07

43.    The Debtor's estimated payroll to non-manager/non-insider employees for the thirty (30) day period following the Chapter 11 petition is approximately $15,611.55.

**Local Rule 1007-2(b)(3)**

44.    A schedule, for the 30-day period following the filing of the chapter 11 petition, of estimated cash receipts and disbursements, net cash gain or loss, obligations and receivables expected to accrue but remain unpaid, other than professional fees is annexed as **Schedule IV**.

**CONCLUSION**

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct.

Dated: October 15, 2021

DocuSigned by:

*Raymond Sanchez*

5F942A3C6A6E434...

Raymond Sanchez

8

## **SCHEDULE I**

| Fill in this information to identify the case: | | |
|---|---|---|
| Debtor name   **Aguila, Inc.** | | ☐ Check if this is an |
| United States Bankruptcy Court for the:   **SOUTHERN DISTRICT OF NEW YORK** | | |
| Case number (if known):  _____ | | amended filing |

## Official Form 204
### Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders

12/15

A list of creditors holding the 20 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31).  Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 20 largest unsecured claims.

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| Allied Universal Security Services 33-10 Queens Blvd., Ste. 300 Long Island City, NY 11101 | | | | | | $819,667.05 |
| Allied Universal Security Services c/o Laurie Malloy 33-10 Queens Blvd Ste. 300 Long Island City, NY 11101 | | | | | | $408,109.26 |
| Atlantic Tomorrow's Office 134 W 26th St New York, NY 10001 | | | | | | $8,662.96 |
| Clarity Benefit Solutions 77 Brant Ave # 206 Clark, NJ 07066 | | | | | | $123.75 |
| Cluster c/o Talman Tabak 406 Avenue F Brooklyn, NY 11218 | | | | | | $477,251.42 |
| De Lage Landen 1111 Old Eagle School Road Wayne, PA 19087 | | | | | | $4,863.07 |
| Dell Financial Services One Dell Way RR2df-26 Round Rock, TX 78682 | | | | | | $4,147.16 |
| Delta Elevator 1536 Ericson Pl Bronx, NY 10461 | | | | | | $600.00 |

| Debtor | Aguila, Inc. | | Case number (if known) | |
|---|---|---|---|---|
| | Name | | | |

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| Guardian Life Insurance Co. 10 Hudson Yards New York, NY 10001 | | | | | | $590.54 |
| Havana Express Catering Services 815 Hutchinson River Pkwy. Bronx, NY 10465 | | | | | | $92,593.20 |
| Intrepid Group, LLC c/o Romer Debbas, LLP Attn: Jason A Goodman, Esq. 275 Madison Avenue, Ste. 801 New York, NY 10016 | | | Unliquidated | | | $2,022,648.30 |
| Lamb Insurance Services 370 Lexington Ave Suite 608 New York, NY 10168 | | | | | | $16,850.88 |
| Metropolitan Telecommunications 55 Water St 32nd fl New York, NY 10041 | | | | | | $3,640.87 |
| MSA Security 9 Murrary Street New York, NY 10007 | | | | | | $1,577.00 |
| Park View Hotel Jardin Central Pre-Assessment Shelter Justin Podolsky 55 West 110th Street New York, NY 10026 | | | | | | $2,829,344.66 |
| Paylocity 1359 Broadway Suite 808 New York, NY 10018 | | | | | | $3,536.48 |
| Time Warner Cable 400 Atlantic Street Stamford, CT 06901 | | | | | | $396.81 |
| Vonage Business 23 Main St Holmdel, NJ 07733 | | | | | | $1,163.97 |
| We Care Housing Services LLC c/o Albert Faks 55 West 110th Street New York, NY 10026 | | | | | | $171,201.00 |

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

Debtor  **Aguila, Inc.** _____    Case number *(if known)*  _____
      Name

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| **Windstream<br>60 Hudson Street<br>New York, NY 10013** | | | | | | **$3,083.55** |

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com         Best Case Bankruptcy

# <u>SCHEDULE II</u>

| Fill in this information to identify the case: | |
|---|---|
| Debtor name | **Aguila, Inc.** |
| United States Bankruptcy Court for the: | SOUTHERN DISTRICT OF NEW YORK |
| Case number (if known) | |

☐ Check if this is an
amended filing

## Official Form 206D
# Schedule D: Creditors Who Have Claims Secured by Property

12/15

Be as complete and accurate as possible.

**1. Do any creditors have claims secured by debtor's property?**

☐ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.

■ Yes. Fill in all of the information below.

### Part 1: List Creditors Who Have Secured Claims

**2. List in alphabetical order all creditors who have secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim.

| | | Column A | Column B |
|---|---|---|---|
| | | Amount of claim | Value of collateral that supports this claim |
| | | Do not deduct the value of collateral. | |

| 2.1 | **Smith Cairns Ford, Inc.** | | **Unknown** | **$0.00** |

Creditor's Name

**Describe debtor's property that is subject to a lien**
**Installment contract for 2018 Ford E350 Wagon Vin No. NM0GS9E76J1366377**

**900 Central Park Ave.**
**Yonkers, NY 10704**

Creditor's mailing address

**Describe the lien**

**Is the creditor an insider or related party?**
■ No
☐ Yes

Creditor's email address, if known

**Is anyone else liable on this claim?**
■ No
☐ Yes. Fill out Schedule H: Codebtors (Official Form 206H)

**Date debt was incurred**

**Last 4 digits of account number**

**As of the petition filing date, the claim is:**
Check all that apply

**Do multiple creditors have an interest in the same property?**
■ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

☐ Contingent
☐ Unliquidated
☐ Disputed

**3.** Total of the dollar amounts from Part 1, Column A, including the amounts from the Additional Page, if any. | **$0.00** |

### Part 2: List Others to Be Notified for a Debt Already Listed in Part 1

List in alphabetical order any others who must be notified for a debt already listed in Part 1. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for secured creditors.

If no others need to notified for the debts listed in Part 1, do not fill out or submit this page. If additional pages are needed, copy this page.

| Name and address | On which line in Part 1 did you enter the related creditor? | Last 4 digits of account number for this entity |
|---|---|---|

## **SCHEDULE III**



**Aguila, Inc.**
**Statements of Financial Position**
**As of Sept 30, 2021 and June 30, 2021**

**ASSETS**
**Current Assets**
Cash and cash equivalents (Note 1)
Due from DHS and other receivables (NET)
Prepaid expenses and other assets (Note 3)
Total Current Assets

**Non-Current Assets**
Other Non-Current Assets (Note 4)

Total Assets

**LIABILITIES AND NET ASSETS**
**Current Liabilities**
Accounts payable and accrued expenses (Note 5)
Due to SBS (PPP Loan)
Total Current Liabilities

**Net Assets**
Without donor restriction

Total Liabilities and Net Assets

Checking

| | September-21 | June-21 |
|---|---|---|
| | $    2,620,541 | $       921,103 |
| | 4,207,674 | 5,554,305 |
| | 59,209 | 59,209 |
| | 6,887,424 | 6,534,617 |
| | - | 213,698 |
| | $    6,887,424 | $    6,748,315 |
| | $    7,376,534 | $    6,828,520 |
| | 1,918,000 | 1,918,000 |
| | 9,294,534 | 8,746,520 |
| | (2,407,110) | (1,998,206) |
| | $    6,887,424 | $    6,748,315 |
| | $                - | $                - |

**<u>SCHEDULE IV</u>**

|  | Operating | Fulton |
|---|---|---|
| Cash In Bank - as of Oct 12, 2021 | 3,080,187.15 | 2,500.32 |
| **Outstanding Checks:** |  |  |
| Total Outstanding Checks | 1,006,077.21 | - |
| **Outstanding Wire Transfer** |  |  |
| Total Outstanding Wire Transfer | - | - |
| **Total Cash Postion - As of Oct 12, 2021** | 2,074,109.94 | 2,500.32 |
| **Transfers** |  |  |
| Sub-Total Transfers | (28,718.60) | (2,500.32) |
| **Per Payment Schedule** |  |  |
| Sub-total per Payment Schedule | 2,045,391.34 | - |
| **Total Cash Position after allotment** | - | - |
| **Payroll Schedule - Administration** |  |  |
| Sub-Total | - | - |
| **Cash Balance - After Nov 5, 2021** | - | - |

| Parkview | Payroll | Capital One | Total |
|---|---|---|---|
| 21,240.62 | 37,600.52 | 2,300.00 | 3,143,828.61 |
| - | 2,360.06 | - | 1,008,437.27 |
| - | - | - | - |
| 21,240.62 | 35,240.46 | 2,300.00 | 2,135,391.34 |
| (21,240.62) | 54,759.54 | (2,300.00) | - |
| - | - | - | 2,045,391.34 |
| - | 90,000.00 | - | 90,000.00 |
| - | (90,000.00) | - | (90,000.00) |
| - | - | - | (0.00) |

| Notes |
|-------|

See - Available Balance Today Per Cash Position Report -
SUMMARY Worksheet


See - Outstanding Checks Per Cash Position Report -
SUMMARY Worksheet


See - Outstanding Wire Transfer Per Cash Position Report -
SUMMARY Worksheet


Proposed Transfers to Close the Accounts