CULLEN AND DYKMAN, LLP
Thomas Slome, Esq.
100 Quentin Roosevelt Boulevard
Garden City, New York 11530
(516) 357-3700
Email: tslome@cullenllp.com

Michelle McMahon, Esq.
44 Wall Street
New York, New York 10005
(212) 510-2296
Email: mmcmahon@cullenllp.com

*Counsel to the Official Committee of Unsecured Creditors*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 21-11776 (MG) |
| Aguila, Inc. | |
| Debtor. | |

### DECLARATION OF JAMES O'BRIEN IN SUPPORT OF CONFIRMATION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS' SECOND AMENDED PLAN OF LIQUIDATION

I, James O'Brien, declare pursuant to 28 U.S.C. §1746 as follows:

1.      I am a partner of Grassi & Co., the retained financial advisor to the Official

Committee of Unsecured Creditors (the "Committee") of Aguila, Inc. (the "Debtor"), pursuant to

an order dated April 6, 2022 entered by the Bankruptcy Court [Dkt. No. 84].

2.      I submit this affidavit in support of confirmation of the *Official Committee of*

*Unsecured Creditors' Second Amended Plan of Liquidation* [Dkt. No. 94] (the "Plan").

Capitalized terms not otherwise defined herein shall have the meaning set forth in the Plan and

pursuant to the *Order (i) Approving Disclosure Statement; (ii) Establishing A Voting Record*

*Date, (iii) Approving Solicitation Packages And Procedures For Distribution Thereof; (iv) Approving The Form Of Ballot And Establishing Procedures For Voting On The Plan; (v) Approving The Form Of Notice To Non-Voting Classes Under The Plan; (vi) Setting A Deadline For Filing The Plan Supplement; And (vii) Establishing Notice And Objection Procedures For Confirmation Of The Plan* dated May 19, 2022 [Dkt. No. 96] (the "<u>Disclosure Statement Order</u>").

3.        I have reviewed the Plan, the *Plan Supplement* [Dkt. No. 110], *Second Amended Disclosure Statement for the Official Committee of Unsecured Creditors' Second Amended Plan of Liquidation* [Dkt. No. 97] (the "<u>Disclosure Statement</u>") and the Disclosure Statement Order.

4.        In my capacity as financial advisor to the Committee I have become familiar with and analyzed the business, operations, financial condition and projects of the Debtor. I am familiar with the Debtor's books and records and the claims filed against the Debtor. I also assisted and advised the Committee in formulating the Plan, including the estimation and treatment of Claims hereunder.

5.        The Plan is a plan of liquidation that provides for the liquidation of the Debtor's assets. The Plan provides for the appointment of the Plan Administrator, Lori Lapin Jones, Esq. of Lori Lapin Jones PLLC (the "<u>Plan Administrator</u>"), who will oversee the orderly liquidation of the Debtor's operations, monetize the Debtor's assets and make distributions to Holders of Allowed Claims as provided in the Plan. The Plan will primarily be funded with the Debtor's Available Cash and collection of Accounts Receivable. The Plan may also be funded with net proceeds from litigation, if any, and the net proceeds from the liquidation of any other assets of the Debtor. The Plan provides for payments on Allowed Claims in accordance with the priorities for Claims as set forth under the Bankruptcy Code.

6.      The information set forth in the Plan, Disclosure Statement and the Plan Supplement is true and correct to the best of my knowledge, information and belief.

7.      Except as otherwise indicated, all matters set forth in this declaration are based on: (a) my personal knowledge; (b) my review of relevant documents; (c) my view, based upon my experience and knowledge of the Debtor's business and financial condition; (d) as to matters involving bankruptcy law or rules, my reliance on the advice of the Committee's bankruptcy counsel. If I were called upon to testify, I could, and would, testify competently to the facts set forth herein.

**The Claims against the Debtor**

8.      There are two Classes of Claims under the Plan – Class 1 consisting of Secured Claims and Class 2 consisting of General Unsecured Claims. All Holder of the Claims in each of these Classes hold similar Claims. There is a rational basis for these two separate Classes because the Holders of Secured Claims have difference rights against the Debtor from the rights held by Holders of General Unsecured Claims.

9.      The estimations of Allowed Claims set forth in the Disclosure Statement are accurate based on my review of the filed and scheduled Claims against the Estate, certain related pleadings filed in the Chapter 11 Case, and the Debtor's books and records.

**No Retiree Benefits**

10.      Based on my review of the Debtor's books and records, the Debtor has no obligation to provide any retiree benefits, as that term is defined in section 1114 of the Bankruptcy Code.

**The Plan Provides an Adequate Means for its Implementation and is Feasible**

11.     The Committee filed its Plan to maximize the value of the Debtor's Estate for creditors, and I believe it is an appropriate method for doing so and is in the best interest of creditors.

12.     The Plan and the Plan Supplement provide adequate and proper means for the Plan's implementation. Article IV of the Plan provides for the appointment of a Plan Administrator to oversee liquidation of the Debtor pursuant to the terms of the Plan and funding for expenses related to the winddown of the Debtor and Distributions required to be made under the Plan. The Plan will be primarily funded with the Debtor's Cash and collection of the Accounts Receivable, and may also be funded with Litigation Proceeds, if any, and the net proceeds from the liquidation and/or turnover of any other assets of the Debtor.

13.     The Plan is feasible because the Estate has sufficient funds to pay unclassified Claims, including Administrative and priority Claims, and Class 1 (Secured Claims), to pay for the costs of administering and fully consummating the Plan and closing the Chapter 11 Case, and to make a distribution of remaining funds to Class 2 (General Unsecured Claims). The Debtor's most recent monthly operating report [Dkt. No. 12] (the "May 2022 MOR"), reports that the Debtor has $4,0007,335 in cash and accounts receivables of $4,154,511 as of May 31, 2022. The estimation that unclassified Claims, including Administrative and priority Claims, and Class 1 (Secured Claims) will be in an aggregate amount under $500,000 is accurate based on estimates provided by Professionals, proofs of claims filed in this Chapter 11 Case, and a preliminary claims analysis as described in the Disclosure Statement. The Debtor also reports in the May 2022 MOR that it is current on its post-petition tax filings, estimated tax payments, trust fund tax payments and quarterly U.S. Trustee Fees. Based on the foregoing, I believe the Estate has

sufficient funds to confirm the Plan, and along with future collections, has sufficient funds to pay

for the projected costs of administering and fully consummating the Plan and closing the Chapter

11 Case and to make a distribution of remaining funds to Class 2 (General Unsecured Claims).

Accordingly, the Plan is feasible, thereby satisfying the requirements of section 1129(a)(11) of

the Bankruptcy Code.

1.  **The Plan is in the Best Interests of Creditors**

14.     Based on discussions with counsel, I understand that the "best interests" test, as

set forth in section 1129(a)(7) of the Bankruptcy Code, requires a bankruptcy court to find either

that all members of an impaired class of Claims or Equity Interests have accepted the plan or that

the plan will provide a member who has not accepted the plan with a recovery of property of a

value, as of the effective date of the plan, that is not less than the amount that such Holder would

recover if the debtor were liquidated under chapter 7 of the Bankruptcy Code. Based on the

foregoing, the best interests test here is only potentially applicable to Class 2 (General Unsecured

Claims) because Class 1 is unimpaired

15.     Based on discussions with counsel and information provided to me by counsel,

along with my personal knowledge of the Debtor's books and records, I believe that the best

interests test is satisfied with respect to the Plan because Holders of Class 2 (General Unsecured

Claims) will receive more money under the Plan than they would receive if the Debtor was

liquidated under chapter 7. Under the Plan, Holders of Class 2 (General Unsecured Claims) will

receive a Pro Rata Distribution from Available Cash remaining after payment of Allowed

Administrative Claims, Allowed Secured Claims, Allowed Priority Tax Claims, U.S. Trustee

Fees, and Allowed Other Priority Claims. I do not believe that distributions to Class 2 would be

greater if the Debtor were liquidated under chapter 7 of the Bankruptcy Code. The Debtor is a

non-profit corporation, and therefore its Chapter 11 Case cannot be converted to a case under

Chapter 7 of the Bankruptcy Code without the Debtor's consent, which to date it has been

unwilling to provide. The hypothetical conversion of the Debtor's Chapter 11 Case to one under

Chapter 7 would entail the appointment of a Chapter 7 trustee who would retain professionals,

increasing costs, and would not increase the distribution to creditors. This would also further

delay distributions to the Holders of Allowed Claims. This additional cost and delay will be

avoided by Confirmation of the Plan. Based on the foregoing, I believe that the Plan will provide

a similar or greater return, in a more expedient manner, to Holders of Allowed Claims than

would conversion to a chapter 7 liquidation.

### The Releases, Injunction and Exculpation

16.     In my opinion the release, injunction and exculpation provisions set forth in

Article XI of the Plan, as implemented by this Confirmation Order, are fair and equitable, given

for fair consideration based on the parties' efforts to formulate and solicit votes in favor and

confirmation of the Plan, and are in the best interests of all parties in interest in this Chapter 11

Case. Under the Plan, there are no third-party releases. The exculpations and indemnifications

are extremely limited in nature, extend only to acts in connection with the bankruptcy case and

the Plan and exclude criminal acts, gross negligence and willful misconduct. Further, any such

litigation would hinder the Plan Administrator's efforts to implement the provisions of the Plan,

increasing her expenses and decreasing the funds available for distribution to creditors. The

releases, indemnification and injunction provisions are provisions that are typically approved

through chapter 11 plans and are appropriate in this Chapter 11 Case.

**Conclusion**

17.    Based on the foregoing, and based on my involvement in the Plan process in this Chapter 11 Case and the advice of counsel as described above, I respectfully request that the Plan be confirmed.

I declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing statements are true and correct, to the best of my knowledge, information and belief, and as to those statements made upon information and belief, I believe them to be true.

Dated: June 22, 2022

_____
James O' Brien

**Exhibit 1**