```
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X    NOT FOR PUBLICATION
In re:
                                                                 Chapter 11

          AGUILA, INC.,                                          Case No. 21-11776 (MG)

                                        Debtor.
------------------------------------------------------------X
```

### MEMORANDUM OPINION AND ORDER SUSTAINING OBJECTION TO CLAIM NO. 15 FILED BY JENNY RIVERA

*A P P E A R A N C E S:*

DAVIDOFF HUTCHER & CITRON LLP
*Attorneys for the Debtor*
605 Third Avenue
New York, New York 10158
By:     Robert L. Rattet, Esq.
        Jonathan S. Pasternak, Esq.

LAW OFFICES OF ALLA KACHAN, P.C.
*Attorney for Jenny Rivera*
2799 Coney Island Avenue, Suite 202
Brooklyn, New York 11235
By:     Alla Kachan, Esq.

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is Aguila, Inc.'s (the "Debtor" or "Aguila") objection to claim no. 15 ("Claim No. 15") filed by Jenny Rivera ("Rivera") ("Original Rivera Claim Objection," ECF Doc. # 102) and its supplemental objection ("Supp. Rivera Claim Objection," ECF Doc. # 138, and together with the Original Rivera Claim Objection, the "Rivera Claim Objection").

Annexed to the Original Rivera Claim Objection are (i) the proof of claim filed for Claim No. 15 and an executive employment agreement, dated September 1, 2019, between the Debtor and Rivera (the "Rivera Employment Contract," Original Rivera Claim Objection, Ex. A); (ii)

the summons and verified complaint, dated July 26, 2021, filed in the Supreme Court of the State of New York, Bronx County, captioned *Jenny Rivera v. Aguila, Inc., Raymond Sanchez in his official capacity as CEO of Aguila, Inc., and Sonally Melendez, in her official capacity as Chairwoman of the Board of Directors of Aguila, Inc.*, Index No. 810061/2021E. ("State Court Action") ("Rivera Complaint," Original Rivera Claim Objection, Ex. B); (iii) a copy of the Debtor's Bylaws ("Aguila Bylaws," Original Rivera Claim Objection, Ex. C);[1] and (iv) copies of the Debtor's 2019 Board Meeting Minutes ("Board Minutes," Original Rivera Claim Objection, Ex. D).

Annexed to the Supplemental Rivera Claim Objection are affidavits of three Board members and one Aguila employee that were filed in the State Court Action in support of Aguila's motion to dismiss the Rivera Complaint: (i) the affidavit of Sonally Melendez, Chairwoman of the Aguila Board of Directors ("Board"), dated August 27, 2021 ("Melendez Aff.," Supp. Rivera Claim Objection, Ex. A); (ii) the affidavit of Dolores Batista, Member of the Board, dated August 27, 2021 ("Batista Aff.," Supp. Rivera Claim Objection, Ex. B); (iii) the affidavit of Denise Romero, Member of the Board, dated August 27, 2021 ("Romero Aff.," Supp. Rivera Claim Objection, Ex. C); and (iv) the affidavit of Beatriz O'Neill, Aguila's Human Resources Manager ("O'Neill Aff.," Supp. Rivera Claim Objection, Ex. D.).

No response was filed to the Original Rivera Claim Objection. The Court held a hearing on the Original Rivera Claim Objection on July 19, 2022 ("Hearing"). At the Hearing, the Debtor's counsel said that Rivera's counsel, Abe George, Esq., contacted Debtor's counsel just before the Hearing and requested that the Hearing be adjourned to provide further time to respond to the Original Rivera Claim Objection. Even though no appearance was made at the

---

[1] The Aguila Bylaws attached to the Original Rivera Claim Objection do not contain a date. However, an identical version of the Aguila Bylaws are attached to the Melendez Affidavit as Exhibit B. (Melendez Aff., Ex. B.) Melendez states in her affidavit that "the [Aguila] Bylaws [were] in effect throughout 2019." (*Id.* ¶ 3.)

2

hearing by Rivera's counsel, with Debtor's counsel's consent, the Court agreed to adjourn the hearing until August 30, 2022. The Court also directed Debtor's counsel to file a supplemental objection and supporting evidence. A written order was entered setting forth the schedule for filings by both Debtor's counsel and Rivera's counsel. *See Order Adjourning Debtor's Objection to Claim No. 15 by Jenny Rivera*, dated July 19, 2022 ("Scheduling Order," ECF Doc. # 133). The Scheduling Order required Debtor's counsel to file its supplemental claim objection on or before 5:00 pm, August 2, 2022, and required Rivera's counsel to file Rivera's response and supporting evidence on or before 5:00 pm, August 16, 2022. (*Id.*) The adjourned hearing was scheduled for 10:00 am, August 30, 2022. The Scheduling Order was served on Rivera's counsel. (*See* "Affidavit of Service," ECF Doc. # 139.)

The Debtor's counsel filed and served its Supplemental Rivera Claim Objection on August 1, 2022. (Supplemental Rivera Claim Objection; Affidavit of Service.) Rivera's counsel failed to timely file and serve her response and supporting evidence before the August 16, 2022, deadline and did not request any extension of the deadline. On August 24, 2022, Debtor's counsel filed a certificate of no objection to the Debtor's objection to Claim No. 15. (*See* Certificate of No Objection, ECF Doc. # 145.)

On August 25, 2022, Rivera's counsel, now Alla Kachan, Esq., rather than Abe George, Esq., filed an untimely *Response in Opposition to the Debtor's Objection to Claim No. 15 filed by Jenny Rivera* ("Response," ECF Doc. # 148). No explanation for the late filing was given and no request for permission to make the late filing was made. The untimely Response will not be considered.[2]

For the reasons explained below, the Court **SUSTAINS** the Rivera Claim Objection and **EXPUNGES** Claim No. 15 in its entirety.

---

[2] As briefly explained below, despite the untimely filing of the Response, the Court has nevertheless reviewed the Response and has concluded that it would not alter the Court's ruling.

3

## I. BACKGROUND

### A. The Rivera Employment Contract, Rivera's Termination, and Claim No. 15

Rivera alleges that she was appointed the CEO of Aguila in 2017, and her employment as CEO was ratified by the Rivera Employment Contract, dated September 1, 2019. (Rivera Complaint ¶¶ 7, 8.) The Rivera Employment Contract was signed only by the Debtor's former Board Chair Evangelista Pahecco-Nunez ("Nunez") and provides that the annual base salary to be paid by the Debtor to Rivera is $200,000. (Rivera Employment Contract § 2.1.)

The Debtor states that following a criminal investigation initiated by the Attorney General of the State of New York, Rivera was removed as CEO of the Debtor on September 30, 2020. (Original Rivera Claim Objection ¶ 11.) The Attorney General's Office asserted probable cause for the investigation based on alleged commercial bribery and bribe receiving, grand larceny, criminal possession of stolen property, falsifying business records, false instrument filing, and money laundering. (*Id.*) Rivera's ultimate termination occurred on October 9, 2020. (*Id.*)

Before the Petition Date and before asserting Claim No. 15, on July 26, 2021, Rivera filed the Rivera Complaint alleging that the Rivera Employment Contract was breached when she was fired by the Debtor and the Debtor failed to continue paying her salary for a period of 18-months. (*Id.* ¶ 12–13.) On October 21, 2021, the Debtor answered with a general and specific denial of Rivera's claims. (*Id.* ¶ 14.) No determination was made in the State Court Action due to the filing of the Debtor's bankruptcy case. (*Id.* ¶ 16.)

On November 16, 2021, Rivera filed Claim No. 15 in the amount of $300,000. (*Id.* ¶¶ 9–10.) The basis for this claim was unpaid salary under the Rivera Employment Contract. (*Id.*, Ex. A.)

B.  **The Original Rivera Claim Objection**

In the Original Rivera Claim Objection, the Debtor argued that the Rivera Employment Contract is unenforceable because under the Aguila Bylaws, Nunez did not have the authority to unilaterally approve the Rivera Employment Contract on behalf of the Debtor. (*Id.* ¶ 15.) According to the Debtor, the Aguila Bylaws require that any agreement by the Debtor to a transaction with another individual, entity, or non-profit, must be approved by the Board. (*Id.* ¶ 24 (citing Aguila Bylaws § 4.01).) The Board may provide its approval either by a majority vote at a Board Meeting, at which a quorum is present, or through written approval by all Board members. (*Id.* (citing Aguila Bylaws § 4.16).) Additionally, the Board may authorize any person to enter into any contract or agreement on behalf of Aguila under terms and conditions outlined by the Board. (*Id.* (citing Aguila Bylaws § 10.01).) However, the Debtor asserted that the Aguila Bylaws require "[a]ll obligations" entered into on behalf of the Debtor in excess of fifty-thousand dollars per 12-month period "shall require prior approval of the Board of Directors." (*Id.* (citing Aguila Bylaws ¶ 10.03).) In other words, no individual officer or Board member can unilaterally bind the Debtor to a contract exceeding $50,000, for a time period of 12 months or longer, without the approval of the Board. (*Id.*) The Debtor stated that the Rivera Employment Contract was one that, pursuant to the Aguila Bylaws, was subject to Board approval because it obligated the Debtor pay Ms. Rivera $200,000 per year. (*Id.* ¶ 26.) The Debtor alleged that the Rivera Employment Contract was never approved by the Board. (*Id.* ¶¶ 27–29.)

The Debtor provided three bases to support its argument that the Rivera Employment Contract was never approved by the Board. First, the Debtor noted that the Rivera Complaint is silent whether the Rivera Employment Contract was ever presented to the Board for review, ever subject to a Board vote, or approved by the Board. (*Id.* ¶ 25.) Second, the Debtor stated that the

5

Board Minutes "make no reference of [the Rivera Employment Contract] whatsoever." (*Id.* ¶ 28 (citing Board Minutes).) Third, the Debtor asserted that several members of the Board provided "undisputed testimony" in the State Court Action that establish the Rivera Employment Contract was never presented to the Board for approval, never voted on by the Board, and never approved. (*Id.* ¶ 27.) However, in the Original Rivera Claim Objection, the Debtor did not include the referenced testimony of the Board members; at the Hearing, the Court ordered the Debtor to file the testimony with its supplemental objection.

        C.        **The Supplemental Rivera Claim Objection**

In the Supplemental Rivera Claim Objection, the Debtor attaches the affidavits of the Board members that the Court required. Ms. Melendez testified that for the Debtor to approve an employment contract:

> a Board Meeting must be held, at which a quorum is present, and a majority of the Board Members in attendance must vote in favor of the proposal. Alternatively, all Board Members may confirm their acceptance of the proposal in writing. Pursuant to Agulia's Bylaws, a transaction that would require Board approval would include Aguila entering into an employment agreement with one of its corporate officers.

(Melendez Aff. ¶ 7.)

Ms. Melendez, Ms. Romero, and Ms. Batista also testified that they collectively attended all of the Debtor's Board Meetings in 2019, and they each confirmed that (i) the Rivera Employment Contract was never discussed at those meeting or at any they attended, (ii) none of them voted to approve nor provided written approval of the Rivera Employment Contract, and (iii) none of them authorized any individual to enter into such an agreement on the Debtor's behalf. (Supp. Rivera Claim Objection ¶ 12 (citing Melendez Aff. ¶¶ 10–18; Romero Aff. ¶¶ 4–11; Batista Aff. ¶¶ 4–11).)

Additionally, the Debtor argues that New York state courts routinely reject contracts that are signed by an individual who lacks the power or authority to enter into the agreement. (*Id.* ¶ 8

6

(citing *Dowling v. Terrace City Lodge 1499 IBPOE*, 163 A.D.3d 767, 768 (2d Dep't 2018) ("A contract of sale executed by a not-for-profit corporation's principal, which has not been approved by its board and members in accordance with N-PCL 510, is unenforceable."); *Syracuse Orthopedic Associates v. City of Syracuse*, 136 A.D.2d 923, 923–24 (4th Dep't 1988) ("It is conceded that, in the case of the City, neither the contract nor a memorandum embodying its terms was signed by an authorized officer, and in the case of the County, the contract was not approved by the board of supervisors. This failure to comply with the charter provisions rendered the agreement invalid and unenforceable.").)

## II.  LEGAL STANDARD

Section 501(a) of the Bankruptcy Code provides that "[a] creditor . . . may file a proof of claim" to claim an interest in a debtor's bankruptcy estate. 11 U.S.C. § 501(a). Section 502(a) provides that a claim or interest, properly filed, "is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). Under section 502, if an objection is made, the court shall determine the amount of such claim "as of the filing date." *In re Solutia, Inc.*, 379 B.R. 473, 483 (Bankr. S.D.N.Y. 2007) (citation omitted). Section 502(b)(1) provides that claims may be disallowed if they are "unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1). To determine whether a claim is allowable by law, bankruptcy courts look to "applicable nonbankruptcy law." *In re W.R. Grace & Co.*, 346 B.R. 672, 674 (Bankr. D. Del. 2006).

"The proof of claim, if filed in accordance with section 501 and the pertinent Bankruptcy Rules, constitutes *prima facie* evidence of the validity and amount of the claim under Federal Rule of Bankruptcy 3001(f) and Code section 502(a)." 4 COLLIER ON BANKRUPTCY ¶ 502.02[3][e] (16th ed. 2022); *see also* FED. R. BANKR. P. 3001(f). If the objector does not "introduce[] evidence as to the invalidity of the claim or the excessiveness of its amount, the

7

claimant need offer no further proof of the merits of the claim." 4 COLLIER ON BANKRUPTCY ¶ 502.02 (16th ed. 2022).

"To overcome this *prima facie* evidence, an objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." *Sherman v. Novak* (*In re Reilly*), 245 B.R. 768, 773 (2d Cir. B.A.P. 2000). By producing "evidence equal in force to the prima facie case," an objector can negate a claim's presumptive legal validity, thereby shifting the burden back to the claimant to "prove by a preponderance of the evidence that under applicable law the claim should be allowed." *Creamer v. Motors Liquidation Co. GUC Trust* (*In re Motors Liquidation Co.*), No. 12 Civ. 6074 (RJS), 2013 WL 5549643, at *3 (S.D.N.Y. Sept. 26, 2013) (internal quotation marks omitted); *see also In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173–74 (3d Cir. 1992) (laying out identical burden-shifting framework).

The advisory committee notes to Bankruptcy Rule 9014 state that "the filing of an objection to a proof of claim . . . creates a dispute which is a contested matter." FED. R. BANKR. P. 9014 (advisory committee's note). The advisory committee notes to Bankruptcy Rule 3007 also indicate that "[t]he contested matter initiated by an objection to a claim is governed by Rule 9014." FED. R. BANKR. P. 3007 (advisory committee's note). The Second Circuit has therefore held that "when a debtor files an objection to a claim, the objection has initiated a contested matter." *Pleasant v. TLC Liquidation Trust (In re Tender Loving Care Health Servs.)*, 562 F.3d 158, 162 (2d Cir. 2009). The advisory committee notes also indicate that "if the motion cannot be decided without resolving a disputed material issue of fact, an evidentiary hearing must be held . . . ." FED. R. BANKR. P. 9014 (advisory committee's note to 2002 amendment).

8

### III. DISCUSSION

Rivera's basis for Claim No. 15 was the Rivera Employment Contract that Rivera attached to her proof of claim. However, with the Rivera Claim Objection the Debtor has introduced sufficient evidence that the Rivera Employment Contract is not enforceable.

First, the Aguila Bylaws support the Debtor's argument that the Board was required to approve the Rivera Employment Contract. Section 4.1 of the Aguila Bylaws provides "[t]he business and affairs of the Corporation shall be managed under the direction of the Board of Directors," and Section 7.07 (Compensation) provides that each executive officer shall be entitled to receive compensation for their performance of duties as an officer "as determined by the Board of Directors." (Aguila Bylaws §§ 4.1; 7.07.) Additionally, Section 10.01 implies that the Board must approve contracts on behalf of Aguila, unless the Board authorizes an individual to act on behalf of the Board. (*Id.* § 10.01.) The Debtor argues that the Board was prohibited from delegating to Nunez the authority to approve the Rivera Employment Contract on behalf of Aguila because the contract provides Rivera an annual salary of $200,000 and Section 10.03 of the Aguila Bylaws requires that obligations of the Debtor more than $50,000 per 12-month period "shall require prior approval of the Board of Directors." (Original Rivera Claim Objection ¶ 24; Supplemental Rivera Claim Objection ¶ 11.)

According to the testimony of the Board members, the Board did not delegate authority to Nunez to approve the Rivera Employment Contract. (Melendez Aff. ¶ 7 ("[A] transaction that would require Board approval would include Aguila entering into an employment agreement with one of its corporate officers."); *see also* Melendez Aff. ¶ 16; Batista Aff. ¶ 9; Romero Aff. ¶ 9 (stating they did not vote to approve or authorize any individual to act on Aguila's behalf to enter into the Rivera Employment Contract).)

9

Three Board members each submitted affidavits that they collectively attended each of the Board Meetings in 2019 and the Board never voted on the Rivera Employment Contract, and the Rivera Employment Contract was never approved by the Board. (Menendez Aff. ¶ 10–14; Romero Aff. ¶¶ 4–11; Batista Aff. ¶¶ 4–11.) The affidavits from the Board Members are sufficient evidence to shift the burden to Rivera to prove that the Rivera Employment Contract is enforceable. *Creamer*, 2013 WL 5549643, at *3. Since Rivera did not file a timely response (despite being given more time to respond to the Supplemental Objection), she did not meet her burden.[3]

[*Remainder of page intentionally left blank*]

---

[3]    The primary argument in Rivera's untimely Response for why the Rivera Employment Contract is enforceable is that the Board's attorney drafted and negotiated it and that she continued to provide services to the Debtor after it was executed so she "can not bear the cost of the administrative failure of the Debtor, not having obtained the requisite board approval." (Response ¶ 17.) However, Rivera does allege any facts supporting that the Board ever approved the Rivera Employment Contract. The fact that Rivera was paid for her work before her employment was terminated does not establish that her contract was approved by the Board or waive or estop the Debtor from arguing that Board approval was required.

The Response attaches Rivera's affidavit that was filed in the State Court Action. ("Rivera Aff.," Response, Ex. C at 10–13.) In her affidavit, Rivera states that she does not believe that the Aguila Bylaws in the Melendez Affidavit (that the Debtor attached to the Original Rivera Claim Objection) are reflective of the actual bylaws in effect when the Rivera Employment Contract was executed, and she also does not believe that the Board members that filed affidavits (Ms. Melendez, Ms. Batista, and Ms. Romero) were present at the Board meetings they claimed to have attended. (Rivera Aff. ¶ 13.)

Additionally, Rivera states in her affidavit that she witnessed the Board approve a contract for Aguila's chief of staff, Jose Sierra, that was negotiated and approved solely by the former chairwoman Nunez. (Response ¶ 15–16.) Rivera attaches an Aguila Board Resolution, dated August 3, 2020, to her Affidavit that includes the Board members' signatures approving the payment of Sierra's contract for one year and stating that a special meeting was called to consider the contract. (Response, Ex. C. at 21.) However, this Board Resolution undermines Rivera's argument because it shows an example of the Board calling a special meeting to vote on employment contracts like Rivera's. Rivera fails to allege that there was any similar Board resolution with respect to the Rivera Employment Contract. Therefore, even if the Court were to consider the late filed Response, the Court would still **SUSTAIN** the Debtor's Rivera Claim Objection.

10

## IV. CONCLUSION

Therefore, for the reasons discussed above, the Rivera Claim Objection is **SUSTAINED** and Claim No. 15 is **EXPUNGED.**

**IT IS SO ORDERED.**

Dated:   August 30, 2022
         New York, New York

*Martin Glenn*
MARTIN GLENN
Chief United States Bankruptcy Judge